

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| TIMOTHY L. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CV 06-B-1477-NW |
| ) | |
| MICHAEL J ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Timothy L. Smith brings this action pursuant to Section 405(g) of the Social Security Act, seeking review of the decision of Michael J. Astrue, the Commissioner of the Social Security Administration, denying his application for a period of disability, disability insurance benefits, and supplemental security income. Upon careful review of the administrative record, the submissions of the parties, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be reversed and remanded for further proceedings.

On October 30, 2003, plaintiff filed his initial applications for disability insurance benefits and supplemental security income, alleging that he had been unable to work since "April 16, 2003, due to bulging disks, cracked vertebra, degenerative disc disease, and anxiety." (R. 13.) Plaintiff's initial application was denied, and he timely requested a hearing before an administrative law judge ["ALJ"], alleging additional impairments due to muscle spasms. (R. 94.)

At the time of the hearing, plaintiff was thirty-five years old and had a high school education. (R. 13.) His past relevant work included production assembler, bartender, furniture assembler, radio operator, construction worker, dishwasher, tractor trailer truck driver, concrete mix truck driver, and warehouse worker. (*Id.*)

The ALJ found:

> There is no objective clinical evidence of any condition(s), either singly or in combination, that could reasonably be expected to produce the level of pain, numbness, depression, need to lie down, fatigue due to pain medications, or other symptoms and/or limitations that the claimant and his mother allege preclude him from work.

(R.19.) Based on his review of the record and testimony taken at the hearing, the ALJ determined:

> The claimant has the following residual functional capacity: he can perform a full range of light work with no work at unprotected heights, or around dangerous machinery. He has no more than . . . moderate psychological [or] psychiatric restrictions regarding activities of daily living, social functioning and concentration/persistence/pace.

(R.22.) The ALJ did not include any limitation to plaintiff's residual functional capacity caused by pain. (R.22, 344.) Based on the testimony of the vocational expert, the ALJ determined that plaintiff could perform his past relevant work as a production assembler and as a bartender. (R.23.)

The ALJ issued his unfavorable decision, which became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. Having

exhausted his administrative remedies, plaintiff now seeks, and is entitled to, judicial review pursuant to 42 U.S.C. § 405(g).

## I.  STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, the court's role is narrow, limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were applied. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  The credibility of witnesses and the resolution of conflicting statements and testimony are determined by the Commissioner as the trier of facts. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1242 (11th Cir.1983).  Although "[t]his limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence," *see Moore*, 405 F.3d at 1211, the limited review does not render affirmance of the Commissioner's decision automatic. "'[D]espite [this] deferential standard for the review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached.'" *Lamb*, 847 F.2d at 701 (citation omitted). However, even if the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Bloodsworth*, 703 F.2d at 1239. "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*,

405 F.3d at 1211 (citing *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)).

## II. DISCUSSION

Plaintiff seeks reversal of the Commissioner's decision on four separate grounds:

I. The ALJ's finding the [plaintiff] can perform light work is not based on substantial evidence, as such finding is not supported by the opinions of any physicians of record.

II. The ALJ's mental RFC assessment is deficient as a matter of law because it fails to address Mr. Smith's ability to perform work-related activities.

III. The ALJ's credibility finding is not based on substantial evidence.

IV. The ALJ's finding that [plaintiff] can return to his past relevant work as a production assembler and bartender cannot be sustained because the ALJ failed to pose a complete hypothetical question to the vocational expert, upon whose opinion he relied in making this finding.

(Doc. 8 at 1.) The court finds that the ALJ erred in failing to properly apply the pain standard to plaintiff's claims of disabling pain and he erred in finding plaintiff's testimony of his pain only partially credible without expressly finding whether plaintiff had any pain that affected his residual functional capacity. Because the court finds that the ALJ erred in his determination of the limitations on plaintiff's ability to work caused by pain, the court will not reach plaintiff's other issues.

In order for a plaintiff's testimony about the pain and other subjective symptoms he experienced to be considered, he must show evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain or other

4

subjective symptoms arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain or other subjective symptoms. *Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). Where a claimant's allegations of pain and other subjective symptoms are considered, an ALJ may still reject a claimant's subjective complaints as not credible. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). However, when the ALJ rejects a claimant's pain testimony as not credible, he must articulate specific and adequate reasons for that decision, which is reviewed for substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Although the ALJ may reject evidence of pain, he cannot ignore such evidence.

In this case, the ALJ found "no objective clinical evidence of any condition(s) . . . that could reasonably be expected to produce the level of pain . . . or other symptoms and/or limitations that the claimant . . . alleges preclude him from working." (R.19.) The ALJ's finding of "no objective clinical evidence" is not supported by the record.

Plaintiff was treated by Dr. Muhammad W. Ali at Neurology Pain and Headache Associates. (R.215-17.) Dr. Ali, after his examination of plaintiff and for purposes of treatment, determined plaintiff had "myofascial pain syndrome"[1] in his lower back; (2)

---

[1]"Myofascial pain syndrome" is a term used to describe muscle pain:

"Myofascial pain syndrome " is a condition very similar to fibromyalgia. *See*, *e.g.*, *Green-Younger* [ *v. Barnhart* ], 335 F.3d [99,] 103 n.6 [(2d Cir. 2003)]; *Mondragon v. Apfel*, 3 Fed. Appx. 912, 918, 2001 WL 118292 (10th Cir.

parasthesia[2] numbness in lower extremity possibly due to neuropathy;[3] (3) cervicobrachalgia;[4] (4)hypertension perhaps due to underlying withdrawal syndrome. Dr. Ali's diagnosis and treatment of these impairments are medical evidence of conditions that could cause disabling pain. *Merritt v. Barnhart*, 430 F. Supp. 2d 1245, 1249-50 (N.D. Ala. 2006)(Her diagnoses by her treating physician are cervical spondylosis and foraminal stenosis C5-6 and lumbar spondylosis L5-S1. These diagnoses were reached over time

---

2001)(citing *Stanistreet* [ *v. Chater* ], 21 F. Supp.2d [1129,] 1133 n.11 (citing 2 *Schmidt's Attorneys' Dictionary of Medicine* at M-323 (1995)); *The Merck Manual* 481 (17th ed. 1999)(describing fibromyalgia and cross-referencing myofascial pain syndrome)). The terms have been used interchangeably. *See Sharbaugh v. Apfel*, No. 99-CV-277H, 2000 WL 575632, at *1 n.4 (W.D.N.Y. Mar. 20, 2000)("The terms 'Myofascial Pain Syndrome ' and 'fibromyalgia' have been used interchangeably for several years to describe generally a condition involving pain in the fibrous tissues, muscles, tendons, ligaments, and other white connective tissues."); *see also Santiago v. Sec'y of Health & Human Servs.*, 46 F.3d 1114 n.4, 1995 WL 30568, at *4 n. 4 (1st Cir. 1995) (citing *The Merck Manual* 1369 (16th ed.1992)).

*Alexander v. Barnhart*, 287 F. Supp. 2d 944, 965 (E.D. Wis. 2003).

[2]The term "parenthesis" is used to describe an "abnormal sensation" such as numbness or tingling. *See Doe v. Secretary of Dept. of Health and Human Services*, No. 99-670V, 2004 WL 3321302, 11 n.24 (Fed.Cl. Oct. 5, 2004)(citing DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 1232 (27th ed. 1988)).

[3]"Neuropathy" means "nerve damage." *Edwards v. Barnhart*, Civil No. 3:06CV402, 2007 WL 708802, 10 (D. Conn. Mar. 6,2007).

[4]"Cervicobrachalgia is "pain in the neck radiating to the arm, due to compression of nerve roots of the cervical spinal cord." *Coward v. Massanari*, No. Civ.A. 01-1093, 2001 WL 34368762, 4 n.4 (E.D.Pa. Nov. 15,2001)(quoting DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 307 (27th ed.1988))

through examination, treatment, and imaging. These records are objective evidence of underlying conditions that could give rise to the level of pain and fatigue to which Ms. Merritt testified.); *see also Diaz v. Prudential Ins. Co. of America*, 499 F.3d 640, 646 (7th Cir. 2007)("Taken in the light most favorable to the plaintiff, the evidence of [plaintiff's] repeated attempts to seek treatment for his condition supports an inference that his pain, though hard to explain by reference to physical symptoms, was disabling.").

Therefore, the court finds the ALJ erred in failing to consider Dr. Ali's diagnoses and treatment of plaintiff as objective medical evidence of conditions that are reasonably expected to produce disabling pain. *Walden v. Schweiker*, 672 F.2d 835, 839-40 (11th Cir. 1982); *see also Carradine v. Barnhart*, 360 F.3d 751, 754-55 (7th Cir. 2004).

The court also notes that the record contains evidence that plaintiff had moderate lumbar paraspinal spasm after activity. (R.220.) "Spasm is objective evidence of pain itself" *King v. Barnhart*, 324 F. Supp. 2d 1294, 1301 n.9 (N.D. Ala. 2004)(citing *Foote*, 67 F.3d at 1560); *Cronon v. Barnhart*, 244 F. Supp. 2d 1286, 1292 n.14 (N.D. Ala. 2003).

The court finds that the ALJ's determination that the record contained "no objective clinical evidence" that plaintiff suffered from medical conditions reasonably expected to produce disabling pain is based on a misapplication of the law and is not supported by substantial evidence. Therefore, this case is due to be reversed and remanded to the Commissioner for further proceedings.

7

On remand, the Commissioner shall reassess plaintiff's residual functional capacity, including – but not limited to – limitations on plaintiff's ability to work caused by pain.[5]

---

[5] Although not discussed in this opinion, the court notes that the ALJ's finding that plaintiff is capable of doing light work activity based, in part, on plaintiff's daily activities is not supported by substantial evidence. On remand, the ALJ shall also reconsider the record evidence of plaintiff's daily activities under the appropriate standard. As courts have noted:

> It is not necessary for a plaintiff''s pain to render [him] bed ridden in order for [him] to be disabled.
>
> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity . . . . ***It is well established that sporadic or transitory activity does not disprove disability***.

*Smith v. Califano*, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added). It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances. In *Easter v. Bowen*, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. *See Yawitz v. Weinberger*, 498 F.2d 956, 960 (8th Cir. 1974). ***What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world***. *Douglas v. Bowen*, 836 F.2d 392, 396 (8th Cir. 1987)(quoting *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989). The *Easter* court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting *Rhines v. Harris*, 634 F.2d 1076, 1079 (8th Cir. 1980)).

The Commissioner may conduct any other proceedings consistent with this Memorandum Opinion.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be reversed and this cause remanded for further proceedings. An Order in conformity with this Memorandum Opinion will be entered contemporaneously.

**DONE**, this the 21st day of March, 2008.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

---

*Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003)(Guin, J.)(emphasis added); *see also Carradine*, 360 F.3d at 755-56.
.